UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * *

Stephen Thomas Schouenborg,

Petitioner,

vs. REPORT AND RECOMMENDATION

State of Minnesota,

Respondent. Civ. No. 00-2800 (PAM/RLE)

* * * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 4th day of February, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see Title 28 U.S.C. §2254. The Petitioner appears pro se, and the Respondent appears by John J. Muhar, Itasca County Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

## II. Factual and Procedural Background

The Petitioner is a State prisoner who, on August 7, 1998, entered a plea of guilty, in the Minnesota State Courts, to a

FILED FEB 04 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

charge of second-degree murder, for the death of William Booth.[1] He is currently serving a 420-month sentence at the Minnesota Correctional Facility, in Rush City, Minnesota.

As part of his guilty plea, and in response to questioning from his attorney, the Petitioner affirmed that he had signed a Petition to enter a plea of guilty, after having discussed the Petition with his counsel. Appendix A to Answer to Petition for Writ of Habeas Corpus (Plea Transcript) at 5. In addition, he affirmatively responded when asked if he understood the nature of the rights, which were recited both in the Petition, and during the course of the Plea Hearing, that he would forfeit by entering the plea of guilty. Id. at 6-9. Further, in response to questions from his attorney, the Petitioner admitted that he intentionally shot Booth, and that the act, in part, caused Booth's death. Id. at 9. Before accepting his plea, the State District Judge questioned the Petitioner about his ability to understand the content of the Petition, and asked, among other questions, whether he had

[1]The Petitioner had been indicted by a Grand Jury, in Itasca County, Minnesota, with murder in the first degree, with murder in the second degree, and with conspiracy to commit murder in the first and second degree, on November 7, 1997. On June 23, 1998, by a Complaint, the State of Minnesota filed two additional charges against the Petitioner; namely, one of felony murder, and the other of a crime committed for the benefit of a gang, murder in the second degree. As part of the exchange for his guilty plea, all of the other charges against the Petitioner were dismissed with prejudice.

"any type of mental disability that would affect [his] ability to understand" the proceedings. Id. at 12-13. The Petitioner responded that he had no difficulty in understanding what was happening, but that he did "have a psychological background." Id. at 13. Upon questioning by his attorney, the Petitioner explained that he received "disability from the federal government," for what was "basically a learning disability," and he asserted that he could understand the proceedings, and aid in his defense, acknowledging that he had "been able to read and discuss with [his attorney] all of the many hundreds and hundreds of pages of documents involved in [his] case." Id. 13-14.

In a pro se document filed with the State District Court on August 27, 1998, the Petitioner sought, in part, to recant his guilty plea, and alleged improper conduct on the part of his attorney.[2] The State District Court ordered substituted counsel to represent the Petitioner who, on October 19, 1998, filed Motions, on the Petitioner's behalf, which sought to withdraw the Petitioner's plea of guilty or, in the alternative, to compel the conduct of a mental competency evaluation pursuant to Rule 20.01,

---

[2]The Petitioner also sought the return of his automobile, which had been seized during the investigation into Booth's death, and he asserted that the Itasca County Jail improperly used his own funds to pay the medical expenses he had incurred while detained at that facility. See, Appendix C to Answer to Petition for Writ of Habeas Corpus at 3.

Minnesota Rules of Criminal Procedure. At the Hearing conducted by the State District Court on October 22, 1998, the Petitioner withdrew his pro se Motions and, based upon his counsel's Motions, the Court ordered that the Petitioner undergo a competency evaluation. Thereafter, on the basis of the results of that evaluation, as well as the State District Court's own observations of the Petitioner during the Plea Hearing, the Court concluded that the Petitioner was "competent at the present time, was competent at the time he entered a plea of guilty to the charge of Murder in the Second Degree on August 7, 1998, was competent at the time he moved to recant his plea of guilty, and has been competent throughout the proceedings." Appendix D to Answer to Petition for Writ of Habeas Corpus at 5.

After sentencing, the Petitioner appealed the State District Court's decision not to allow him to withdraw his guilty plea. The Petitioner was represented by the State Public Defender's Office, and he also submitted a supplemental pro se brief. In an unpublished opinion, the Minnesota Court of Appeals affirmed the determinations of the State District Court, and denied the Petitioner's Appeal. See, Minnesota v. Schouenborg, 1999 WL 1102064 (Minn.App. Dec. 7, 1999), rev. denied (Minn., January 18, 2000). With respect to his challenge to the guilty plea, the Court of Appeals observed, as follows:

> We conclude that the trial court did not err in denying Schouenborg's motion to withdraw his plea under either standard set forth in rule 15.05. The record reflects that the trial court made a deliberate and thorough inquiry into Schouenborg's overall mental abilities as well as his learning disability. The court granted Schouenborg's motion for examination of his mental competency under Minn. R. Crim. P. 20. After reviewing the results of the rule 20 examination, including reviewing the hearing record and testimony, the court determined that Schouenborg was mentally competent. The court also had an opportunity to observe Schouenborg during his plea hearing, including Schouenborg's pertinent responses concerning the knowing and voluntary nature of his plea and his disavowal of any improper pressure or inducement to plead guilty. The plea hearing was adequate to support Schouenborg's plea. Thus, the circumstances surrounding Schouenborg's plea demonstrate that his plea was knowingly and voluntarily made and do[es] not require withdrawal of the plea to correct a manifest injustice.

State of Minnesota v. Schouenborg, supra at *1.

In light of this reasoning, the Court of Appeals affirmed the State District Court's denial of the Petitioner's Motion to withdraw his plea. In addition, the Court of Appeals also noted that Schouenborg had "filed a separate pro se brief raising various claims." Id. at *2. The Court stated that it had "fully considered th[o]se claims and conclude[d] that they [we]re without merit." Id.

The Petitioner sought further review in the Minnesota Supreme Court and, by Order dated January 18, 2000, the Petition for further review was denied. Having, thus, first fairly presented

his claims to the State Courts, as required, see, McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997); Barrett v. Acevedo, 169 F.3d 115, 1161 (8th Cir. 1999); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996), the Petitioner filed his Petition for Writ of Habeas Corpus with this Court.[3]

In his Petition, the Petitioner claims that he is entitled to relief, under Title 28 U.S.C. §2254, because: (1) his guilty plea was not knowing and voluntary; (2) he received ineffective assistance of trial counsel; (3) he was denied the opportunity to produce exculpatory medical and forensic evidence; and (4) the Grand Jury which indicted him was improperly informed of the requirements for that Indictment.

## III. Discussion

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were

[3]Originally, and without the benefit of the Petitioner's pro se brief to the Minnesota Court of Appeals, we recommended that the Petition for Writ of Habeas Corpus be dismissed for a failure to exhaust his claims in the State Courts. However, upon an objection to our Report and Recommendation, the District Court, the Honorable Paul A. Magnuson presiding, reviewed the Petitioner's pro se brief, which had not previously been submitted, by the Petitioner, for our review, and concluded that, since the Minnesota Court of Appeals had expressly stated that it had "fully considered" all of the claims raised by the Petitioner in his pro se brief, and found them to be without merit, the Petitioner had exhausted all of the claims included in his Federal Petition, and remanded the matter for a consideration of those claims on their merits.

adjudicated in State Court. See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996). A Federal District Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. § 2254(d).

In a recent Supreme Court decision, the Court explained that the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) present two separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the State Courts. Williams v. Taylor, 529 U.S. 362 (2000). The Court went on to instruct as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the

> writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principal to the facts of the prisoner's case.

Id. at 413.

The Court further explained that a consideration of a State Court's decision, under the "unreasonable application" clause, requires a Federal Court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id.

Thus, under this heightened standard of review, Federal Courts "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id.; see also, Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law, whereas the "unreasonable application" clause addressed mixed questions of fact and law. See, Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda pur-

poses is a mixed question of law and fact that is properly reviewed under the "unreasonable application clause of § 2254(d)(1)"); Becerrill v. Stearns, 2001 WL 1669398 *3 (7th Cir. Dec. 14, 2001) (District Court improperly analyzed question of fact under "unreasonable application" clause, believing it to be mixed question of law and fact); see also, Neelley v. Nagle, 138 F.3d 917, 924 (11th Cir. 1998), cert. denied, 525 U.S. 1075 (1999); Sweeneyt v. Parke, 113 F.3d 716, 718 (7th Cir. 1997); Drinkard v. Johnson, 97 F.3d 751, 767 (5th Cir. 1996). Therefore, where a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal courts may not grant a Writ absent a finding that such an application was unreasonable.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)("We presume state court findings of fact to be correct in habeas proceedings unless the

petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997). Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" Kinder v. Bowersox, supra at 538, citing Title 28 U.S.C. §2254(e)(1).

A. The Petitioner's Claim that His Guilty Plea was Not Voluntarily or Knowingly Made.

The Petitioner advances two arguments in support of his contention that his guilty plea was not voluntarily or intelligently made. First, he asserts that, due to the presence of certain mental conditions, he was unable to understand the nature of the plea agreement he accepted. Second, in an argument that is intertwined with his ineffective assistance of counsel claim, the Petitioner argues that he was coerced, by his attorney, into accepting the guilty plea. We consider each of these arguments in turn.

1. The Petitioner's Competency to Enter a Plea of Guilty.

a. Standard of Review. It is axiomatic "that a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel, may not be collaterally attacked." Marby v. Johnsons, 467, U.S. 504, 508 (1984), citing Tollett v. Henderson, 411 U.S. 258, 266-67 (1973); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Parker v. North Carolina, 397

U.S. 790, 797-98 (1970); McMann v. Richardson, 397 U.S. 759, 772 (1970); Brady v. United States, 397 U.S. 742, 747-48 (1970). Whether a plea is knowing and voluntary is a mixed question of fact and law, see, Easter v. Norris, 100 F.3d 523, 525 (8th Cir. 1996); Porter v. Lockhart, 925 F.2d 1007, 1110 (8th Cir. 1991), and therefore, the determination of the Minnesota Courts, that the Petitioner's plea was voluntarily and intelligently made, may not be disregarded, unless the determination was the product of an unreasonable application of clearly established Federal law, as that law has been determined by the United States Supreme Court. See, Williams v. Taylor, supra at 381; Drinkard v. Johnson, supra at 767-68. Moreover, in considering whether the decision, by the Minnesota Courts, was "unreasonable," we must afford deference to that Court's underlying factual determinations, insofar as they concern matters of historical fact that relate to the circumstances of the Petitioner's guilty plea. See, Parke v. Raley, 506 U.S. 20, 36 (1993); Marshall v. Loneberger, 459 U.S. 422, 431-38 (1983); see also, Title 28 U.S.C. § 2254(e)(1).

As determined by the United States Supreme Court, there are two bases for concluding that a guilty plea was involuntary:

> [E]ither because the accused does not understand the nature of the constitutional protections that he is waiving, see e.g., Johnson v. Zerbst, 304 U.S. 458, 464-65 [(1936)], or because he has such an incomplete understand-

> ing of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense. Smith v. O'Grady, 312 U.S. 329 [(1941)].

Henderson v. Morgan, 426, U.S. 637, 645 n. 13 (1976).

In the final analysis, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, supra at 31.

b. Legal Analysis. As a threshold matter, we note that the Petitioner does not contend that his guilty plea was involuntary because he was unable to understand the charges against him; rather, he only contends that it was involuntary because he did not understand the nature of the constitutional rights he had waived in accepting that plea. See, Petition for Writ of Habeas Corpus, at 5. As an initial consideration, we note that, in concluding that the Petitioner's guilty plea was voluntarily and intelligently made, the Minnesota Court of Appeals made several findings of fact that addressed the circumstances which surrounded his plea. These findings have not been rebutted by the Petitioner -- let alone by a "clear and convincing" showing -- and therefore, we are obliged to presume the correctness of those findings. Marshall v. Lonberger, supra at 431-38; Title 28 U.S.C. § 2254(e)(1).

We must, therefore, properly defer to the State Court's factual determination, that, at his Plea Hearing, the Petitioner acknowledged the knowing and voluntary nature of his plea, and disavowed any improper pressure, or inducement, to plead guilty. Further, we must extend deference to the Court of Appeals' finding, that the State District Court "made a deliberate and thorough inquiry into [the Petitioner's] overall mental abilities as well as his learning disability," during the Hearing on the Petitioner's Motion to withdraw his guilty plea, and determined that he was mentally competent, after "reviewing the hearing record and testimony," as well as the results of the mental competency examination. State v. Schouenborg, supra at *1. Indeed, our own independent examination fully satisfies us that these factual findings were fully supported in the Record.

Therefore, we must address whether, in light of these findings of fact, the State Court's rejection of the Petitioner's challenge to the voluntariness of his plea was the result of a reasonable application of Federal law, as determined by the Supreme Court, and we conclude that it was the product of such an application. The Court's determination, that the Petitioner was competent at the time he entered his plea, and during the proceedings relating to his Motion to withdraw that plea, is properly supported by the Court's factual findings, and constitutes a reasonable application

of the Supreme Court's mandate, that an accused "understand the nature of the constitutional protections that he is waiving * * *."[4]

At the plea Hearing, the Petitioner confirmed that he had been fully informed about the facts of the case, about all of the possible defenses to the charges against him, and about his rights as a criminal Defendant. The Petitioner denied that his guilty plea was the result of promises, or threats. In addition, he responded affirmatively when he was asked whether he understood that the prosecution believed that it had evidence proving his guilt in all of the crimes with which he had been charged, and that, by pleading guilty to a lesser offense, he would not be charged with those other offenses. He also expressed an understanding of his right to a Trial by Jury, during which he could present evidence, question witnesses, and could testify on his own behalf, or he could opt to remain silent, and would only be found guilty by an unanimous Verdict of a Jury, which believed, beyond a reasonable doubt, in his guilt. The Petitioner denied any claim of innocence, and admitted that he had intentionally shot Booth, and that the shooting had led to Booth's death. As to his Petition to

---

[4]As detailed by the Court in Boykin v. Alabama, 395 U.S. 238, 243 n.5 (1969), the rights so implicated include the privilege against self-incrimination, the right to a Trial by Jury, and the right of the accused to confront his accusers.

plead guilty, the Petitioner acknowledged that he had prepared it with his attorney, that he had read it in its entirety, that he understood its contents, and that he signed it "freely and voluntarily."

When asked at the Plea Haring about his ability to understand those proceedings, the Petitioner responded that he could understand, but he stated that he did have a "psychological background." He explained that he was disabled by what he called a "learning disability," but that, nevertheless, he was able to understand the proceedings, and his rights, and that he had been able to assist in his defense. In further questioning by the State District Judge, the Petitioner reaffirmed that he understood the rights that he would waive upon entering a guilty plea and, when asked what plea he wished to enter, the Petitioner responded that he was pleading guilty, because he was guilty, and that he was voluntarily and freely entering that plea.

When the Petitioner filed his Motion to withdraw his plea, the State District Judge concluded, given the issue of the Petitioner's competency, a mental capacity examination would be ordered, and would not occur until the relevant medical records had been amassed, inclusive of the Petitioner's Social Security records. When the report of the mental competency examination was filed with the State Court, the Petitioner's attorney read the report to the

Petitioner by telephone, and the Petitioner was able to read the report at the time of the Court Hearing. No objection was made to the report by the Petitioner, and he did not offer any additional evidence, seek a continuance, or request a further examination, but merely argued that he disagreed with the conclusion reached in that report.

In finding that the Petitioner was mentally competent at the time that he entered his plea, and during the proceedings related to his Motion to withdraw that plea, the State District Court noted that the competency report found it likely that the Petitioner's low scores, on the psychological testing administered during the competency examination, were "secondary to malingering [and] feigning" and that, although the Petitioner had demonstrated some "academic deficits compatible with a learning disorder," he did "not demonstrate the disorganization and maladaption type of mental retardation."

Moreover, the Court observed that, during the competency evaluation, the Petitioner had "provided a thorough account of the charges against him plus the possible ramifications if found guilty," and "was able to report the various pleas, including guilty, not guilty, not guilty by reason of insanity," and was further able to "differentiate an <u>Alford</u> plea from a plea bargain." The State Court Judge also reported the examiner's finding, that the Peti-