tioner had "demonstrated a command of certain legal terms," which he used "in the correct context and in a meaningful fashion," by "generat[ing] a list of ways in which he could better assist in his defense," and "pointing out inconsistencies in the Complaints and other case file documentation." Further, the State District Court recounted the opinion of the examining physicians, that the Petitioner's decision to withdraw his plea was likely predicated on his realization that he might not survive the duration of his incarceration due to health problems. Lastly, the Court related the examining physicians' opinions, that the Petitioner was competent at the time of the Plea Hearing, and at the time he filed his Motion to withdraw that plea and to proceed with the legal process, as he understood that process, and could aid in his defense.

The State Court Judge determined that "[a]ll opinions" contained in the medical examination report were "credible," and she accepted them substantively. She also stated that, at the Plea Hearing, the Petitioner "intelligently and articulately stated factual discrepancies which [he] believe[d] exist[ed] in the case," and that his statements, together with "his ability throughout the proceedings to clearly and directly respond to questions and communicate his thoughts," further evinced the Petitioner's "competence and supporte[d] the opinions" of the competency examiners. Based on all of those considerations, the State Dis-

trict Court concluded that the Petitioner had been competent at the Plea Hearing, and during the proceedings relating to his Motion to withdraw that plea.

Upon our independent review of those findings, we conclude that the Minnesota Court of Appeals reasonably determined that "a deliberate and thorough inquiry into [the Petitioner's] overall mental abilities as well has his learning disabilities" had been conducted by the State District Court, and that "the circumstances surrounding [his] plea demonstrate[d] that his plea was knowingly and voluntarily made." State v. Schouenborg, supra at *1. Accordingly, the State Court's decision is not subject to reversal, and the Petitioner is not entitled to the collateral relief he seeks on this basis.

2. The Alleged Coercion by the Petitioner's Attorney.

Next, the Petitioner claims that his guilty plea was not knowingly and voluntarily made because his attorney completed the Petition to plead guilty, instructed the Petitioner on how to answer the questions asked during the Plea Hearing, and misinformed the Petitioner that he was entering an Alford plea, rather than a guilty plea. In essence, the Petitioner requests relief on the basis that his guilty plea was obtained without his being provided

the effective assistance of counsel that is required by the Sixth Amendment to the United States Constitution.

a. Standard of Review. "Whether [the Petitioner] was deprived of his right to effective assistance of counsel is analyzed under the familiar two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Smith v. United States, 182 F.3d 1023, 1025 (8th Cir. 1999). Under that test, the Petitioner must first "show that counsel's conduct fell below an objective standard of reasonableness," and then "must show that counsel's alleged ineffectiveness prejudiced the defense. Smith v. United States, supra at 1025-26; Siers v. Weber, supra at 974, citing Strickland v. Washington, supra at 687. "In order to show prejudice, a habeas petitioner must establish 'that there is a reasonable probability that but for counsel's unprofessional errors, the result * * * would have been different." Siers v. Weber, supra at 974, quoting Strickland v. Washington, supra at 694. In the particular context of a guilty plea, the Habeas Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Gumangan v. United States, 254 F.3d 701 (8th Cir. 2001).

b. Legal Analysis. Given the nature of the Petitioner's claims of ineffective assistance of counsel, we are unable

to find that he has satisfied his obligation to show that his counsel's conduct fell below the standard of objective reasonableness. Garrett v. United States, 78 F.3d 1296, 1301, 1307 (8th Cir. 1996)(recognizing that, in determining whether counsel's performance was constitutionally deficient, an "objective reasonableness" standard applies, and "there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy."); Cochrell v. Purkett, 113 F.3d 124, 126 (8th Cir. 1997)(noting that Strickland established an "objective reasonableness performance standard"). The crux of the Petitioner's argument is that he was forced to enter a plea agreement, by his attorney, that he did not understand as his attorney told him that he was entering an Alford plea. The Petitioner argues that his attorney forced him to enter the guilty plea by completing the Petition to enter the plea, by requiring the Petitioner to do no more than to sign the Petition, and by instructing the Petitioner how to respond to questioning during the Plea Hearing. In view of our determination, that the Petitioner was competent to enter a knowing and voluntary plea, and after reviewing the transcript of the Plea Hearing, we find that the Petitioner has not overcome the presumption that his attorney's actions were constitutional.

"With an Alford plea, the defendant pleads guilty and consents to the imposition of a sentence while still proclaiming his innocence of the charged offense." Wilson v. Lawrence County, Missouri, 154 F.3d 757, 758 n. 1 (8th Cir. 1998); citing North Carolina v. Alford, supra at 37. In such a circumstance, the Court must "find 'strong evidence of actual guilt' before accepting such a plea." Id., quoting North Carolina v. Alford, supra at 37. Here, the transcript of the Plea Hearing belies the argument, that the Petitioner now makes, that he believed that he was entering an Alford plea, and was duped, by his attorney, into entering a plea of guilty.

First, during the entire Plea Hearing, there was never a mention of an Alford plea, but a guilty plea was, by our count, identified on at least fifteen occasions. See, Appendix A to Answer to Petition for Writ of Habeas. Second, on two separate occasions, when asked how he wanted to plead, the Petitioner responded that he wanted to plead guilty -- first at the start of the Hearing, and then, again, at the close of the Hearing, after he had been fully questioned by both his attorney, and by the State Court Judge about his understanding of the plea, and of the rights that he would be waiving by entering that plea. Id. at 4, 16. Third, the Petitioner did not assert, during the course of the Plea Hearing, that he was innocent of the crimes of which he was charged but, rather,

he plainly admitted that he had intentionally shot Booth, and that his actions had caused Booth's death, and explained that he was pleading guilty because he was, in fact, guilty. Id. at 9, 16. Finally, on several occasions, the Petitioner was asked if he had any questions about the proceeding, his plea, or the charges against him, and, in each instance, the Petitioner denied having any questions.

Having determined the Petitioner was mentally competent to enter a knowing and intelligent guilty plea, we find it incredulous that the Petitioner would have so readily, and plainly, admitted his guilt if he was merely entering an Alford plea, which is predicated on a proclamation of innocence. Likewise, if the Petitioner believed that he was entering an Alford plea, we find it inconceivable that, when asked how he wanted to plea, he would respond that he wanted to plead guilty, if he truly wanted to enter an Alford plea so as to maintain his pledge of innocence. Of course, we understand that the Petitioner claims that he responded as he did, during his Plea Hearing, because he was so instructed by his attorney, but having determined that the Petitioner was mentally competent to enter a voluntary and knowing plea of guilty, we find no basis to conclude that he unable to express himself, as being desirous of an Alford plea if that had truly been his intent. This is further evidenced by the fact that, when questioned by the

State Court Judge, the Petitioner was able to volunteer information about the disability, for which he was receiving Social Security benefits, and was able to answer the questions asked of him by his attorney which related to that disability, notwithstanding the fact that, by every appearance, the testimony was unexpected, and could not have been previously coached.

We also find that the transcript of the Plea Hearing plainly, and forcefully, contradicts the Petitioner's assertion that he misunderstood the nature of the plea he was entering, because his attorney completed the Petition to enter a guilty plea, and he merely signed it. At the Plea Hearing, the following exchange occurred between the Petitioner and his attorney:

> Q. * * * [B]efore coming to court did you and I review and prepare a form entitled petition to enter a plea of guilty.
>
> A. Yes.
>
> Q. Did you and I prepare that petition together.
>
> A. Yes, we did.
>
> Q. And did you read it in its entirety?
>
> A. Yes, I did.
>
> Q. Do you feel that you understand the contents of the petition?
>
> A. Yes, sir.

Q. Are the statements on the petition true and correct to the best of your knowledge?

A. Yes, sir.

Q. And did you sign the back page of the petition?

A. Yes, I did.

Q. Did you do that freely and voluntarily?

A. Yes, I did.

Q. Do you have any questions about this petition or about any of this proceeding?

A. No, sir.

Appendix A to Answer to Petition for Writ of Habeas Corpus, at 10. The Petitioner offers no cogent showing as to why he would lie to the Court, under oath, in order to enter a plea which, now, he claims to have rejected in favor of an Alford plea. Even if, as the Petitioner currently contends, the Petitioner's attorney had completed the Petition to enter a guilty plea, and the Petitioner simply signed that completed form, his testimony resounds that he read the entire form, understood its content, and freely and voluntarily signed it.

The Petitioner has presented no evidence which so much as suggests, let alone demonstrates, that his attorney's conduct fell below an objective standard of reasonableness. Rather, the Record convincingly demonstrates that the Petitioner knowingly, and volun-

tarily entered a guilty plea, after being fully apprised of the charges against him, as well as the rights he was forfeiting by the acceptance of that plea arrangement. Even if the Petitioner had been led to believe, through some act of his attorney, that he was entering an Alford rather than a guilty plea, that mistake would have been cured at the Plea Hearing, where the transcript clearly reflects that the Petitioner never maintained his innocence, but publicly entered a plea of guilty because he was, in fact, guilty.

Since the Petitioner has failed to satisfy the first prong of the Strickland ineffective assistance of counsel test, we need not proceed to the second prong, and we conclude that the State Courts properly rejected the Petitioner's claim, that his guilty plea was not intelligently and voluntarily made, and his related claim, that he was denied the effective assistance of counsel. Accordingly, we recommend that this aspect of his Petition for a Writ of Habeas Corpus be denied.

B. The Petitioner's Claims that He was Improperly Indicted, and that He was Denied the Use of Certain DNA evidence.

The Petitioner contends that his Indictment was invalid because the Grand Jury was improperly instructed and was not allowed to consider lesser included charges, and because he was not permitted to use certain medical and forensic evidence that had been collected in the investigation of Booth's death. However,

having concluded that the Petitioner entered into his guilty plea knowingly and voluntarily, and with the effective assistance of counsel, the fact of his guilty plea precludes granting the relief the Petitioner requests on these remaining claims. As the Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett v. Henderson, supra at 267.

To be sure, there are exceptions to this general rule, but we are unable to find that the Petitioner's remaining two claims qualify for any such exception.

An exception to the general rule, that all collateral, non-jurisdictional claims are extinguished with a guilty plea, provides that, despite having entered such a plea, a person may pursue a claim that "attacks 'the State's power to bring any indictment at all,' United States v. Broce, 488 U.S. 563, 575,(1989), that protects a defendant's 'right not to be haled into court,' Blackledge v. Perry, 417 U.S. 21, 30, 94(1974), and that 'the charge is one which the State may not constitutionally prosecute,' Menna v. New York, 423 U.S. 61, 62-63 n. 2,(1975) (per curiam)." United States

v. Morgan, 230 F.3d 1067, 1070 (8th Cir. 2000). Claims that a statute is facially unconstitutional would fall under this exception, Id., citing Sodders v. Parratt, 693 F.2d 811, 812 (8th Cir. 1982); United States v. Johnston, 199 F.3d 1015, 1019 n. 3 (9th Cir. 1999), but claims, that a statute was unconstitutional as applied, would not. Id.

Under the general rule advanced in Tollett, the Petitioner's guilty plea forecloses any collateral challenge to that plea premised upon evidence that the Petitioner might have wanted to employ at his Trial. Likewise, the rule prevents the Petitioner from challenging his Indictment through a Habeas Corpus Petition, for the Supreme Court has explained that, in pleading guilty, a defendant is not only admitting to the various acts comprising the charged offense, but he is also admitting to having committed the substantive crime charged. United States v. Broce, 488 U.S. 563, 570 (1989). Thus, the knowing and voluntary decision to enter a guilty plea forecloses a collateral challenge to the Indictment, because the Petitioner has admitted that he committed the crime contained in that formal charge. Id at 571; see also, Weisberg v. State of Minnesota, 29 F.3d 1271, 1279 (8th Cir. 1994)(insufficiency of criminal Complaint not subject to collateral attack, following a voluntary guilty plea, except to the extent that the Court's jurisdiction is being challenged); United States v. Wade, 977 F.2d

586, 1992 WL 301953 (8th Cir., October 23, 1992)(argument that there was a constitutional infirmity in the composition of the Grand Jury that indicted the defendant was barred by unconditional plea of guilty); Sodders v. Parratt, supra at 812 (claim that Information was jurisdictionally defective waived by voluntary guilty plea); Perry v. United States, 576 F.2d 158, 159 (8th Cir. 1978)(a claimed insufficiency in an Indictment waived by guilty plea). While "[a] guilty plea waives all but 'jurisdictional' defects," such as "when 'the indictment on its face fails to state an offense,'" the Petitioner has made no such contention here. United States v. Fitzhugh, 78 F.3d 1326, 1330 (8th Cir. 1996), quoting O'Leary v. United States, 856 F.2d 1142, 1143 (8th Cir. 1988).

As a consequence, we may not consider the Petitioner's claims concerning the Grand Jury, or the evidence gathered during the investigation into Booth's death, and those claims should be rejected as a legitimate basis to secure Habeas relief, as well. Therefore, finding no merit to the Petitioner's Habeas request, we recommend that his Petition be denied in all respects.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 22, 2002,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 22, 2002,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.